# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

ITN FLIX, LLC, a Utah limited liability company,
                *Plaintiff*,

vs.

GLORIA HINOJOSA, an individual;

AMSEL, EISENSTADT, & FRAZIER: A TALENT & LITERARY AGENCY, INC., a California corporation;

ROBERT RODRIGUEZ, an individual;

TROUBLEMAKER STUDIOS, L.P., a Texas limited partnership;

EYA PRODUCTIONS, INC., a Texas corporation;

MACHETE KILLS, LLC, a Texas limited liability company;

MACHETE'S CHOP SHOP, INC., a Texas corporation;

OVERNIGHT, LLC, a Delaware limited liability company;

ALDAMISA ENTERTAINMENT, LLC, a California limited liability company;

1821 PICTURES, INC., a California corporation;

QUICK DRAW PRODUCTIONS, LLC, a Texas limited liability company;

OVERNIGHT FILMS, LLC, a Delaware limited liability company;

OPEN ROAD FILMS, LLC, a Delaware limited liability company; and

DOES 1-100.

                *Defendants*.

**MEMORANDUM DECISION AND ORDER**

Case No.  1:13-cv-00022-RJS

Judge Robert J. Shelby

On the heels of the box office success of vengeance-themed action films, Plaintiff ITN Flix, an independent company based in Utah, decided to produce a trilogy of films starring actor Danny Trejo. ITN entered into an exclusive license agreement with Mr. Trejo, developed a plan to market the films through a mobile application, and produced a film entitled *Vengeance*. ITN now alleges that the Defendants—thirteen out-of-state individuals or entities in the entertainment industry—injured ITN's business by producing or distributing similar action films, ruining ITN's marketing strategy, and blatantly disregarding ITN's contractual relationship with Mr. Trejo.

Ten of the named Defendants[1] (collectively, Movants) ask the court to dismiss for lack of personal jurisdiction. (Dkt. Nos. 90, 91, 109, 110.) As out-of-state residents, the Movants argue that the court may not exercise its authority in a manner consistent with due process, because none of the Movants purposefully directed their actions at ITN or Utah. Several of the Movants further deny having any knowledge of ITN, its activities in the State of Utah, or its exclusive relationship with Mr. Trejo. According to the Movants, any film-related activities or contact with the State of Utah is entirely unrelated to the subject matter of this lawsuit.

After careful consideration and for the reasons stated in the Movants' briefing, the court finds that it lacks personal jurisdiction over the Movants. The court **GRANTS** the motions to dismiss and **DISMISSES** the claims against the Movants without prejudice to re-file in another forum. (*Id.*) Pursuant to Federal Rule of Civil Procedure 41(b), the court also **DISMISSES** without prejudice the claims against Defendant Overnight Films, LLC.

---

[1] The Movants includes the following Defendants: Gloria Hinojosa; Amsel, Eisenstadt & Frazier: A Talent & Literary Agency, Inc.; Robert Rodriguez; Troublemaker Studios, L.P.; Eya Productions, Inc.; Machete Kills, LLC; Aldamisa Entertainment, LLC; 1821 Pictures, Inc.; Quick Draw Productions, LLC; and Open Road Films, LLC.

# I. BACKGROUND

## A. Procedural History

ITN instituted this action in January 2013 by filing a Complaint asserting five causes of action against four Defendants. (Dkt. 2.) Defendants responded with a motion to dismiss. (Dkt. 9.) During a hearing in May 2013, the court concluded that the Complaint failed to allege sufficient facts for the court to exercise jurisdiction over Defendants. The court dismissed the Complaint, but granted ITN leave to amend. (Dkt. 48.)

ITN filed its First Amended Complaint in June 2013. (Dkt. 65.) The Amended Complaint incorporates substantially the same allegations asserted in the initial Complaint, but added six new causes of action and an additional seven defendants. (Dkt. 65.) The Amended Complaint also contains a series of allegations relevant to this court's jurisdictional analysis, which the court now presents in the light most favorable to Plaintiff ITN. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

## B. The Parties

### 1. Plaintiff ITN

Based in Utah, ITN produces and promotes independent films and creates entertainment-related products. (FAC ¶¶ 1, 26.) ITN is in the midst of producing a three-part series of vigilante films entitled *Vengeance*, starring Los Angeles-based actor Danny Trejo. (FAC ¶ 27.) Leading up to production, ITN entered into an agreement with Mr. Trejo (the License Agreement). The License Agreement purportedly grants ITN exclusive world-wide rights to Mr. Trejo's celebrity status, including his name, image, likeness, and voice. (FAC ¶ 31.) ITN alleges that it owns "all right, title, and interest" in the "proceeds" of Mr. Trejo's acting services.

(FAC ¶ 32.) ITN further asserts that it neither sublicensed nor assigned its interest under the License Agreement. (FAC ¶ 34.)

Part of ITN's pre-release promotion of the first *Vengeance* film involved contracting with a third party to develop a mobile game application (the App) for release on mobile platforms. (FAC ¶ 100.) The App follows the same theme and plot as the film, and was intended to generate public interest in the film. (FAC ¶ 99, 100.) To help the App gain traction and credibility, ITN persuaded Stephen Wozniak, co-founder of Apple, Inc., to sign on to the project. Mr. Wozniak agreed to lend his name, likeness, and celebrity endorsement to the App and to promote the App through the media. (FAC, ¶ 107.) Because Mr. Wozniak's pedigree makes him a celebrity in his own right, ITN assumed that the App, and the *Vengeance* film by proxy, would be successful. (FAC ¶ 105.)

    2. *The Movants*

Each of the Movants in this case is involved in some capacity in the film industry. Gloria Hinojosa and Amsel, Eisenstadt & Frazier (collectively, Talent Agency Defendants) act as Mr. Trejo's agent and agency in the entertainment industry. (Dkt. 90; FAC ¶ 40.) The Talent Agency Defendants negotiated Mr. Trejo's involvement in a number of films, including films produced after ITN and Mr. Trejo executed the License Agreement.

Robert Rodriguez and Machete Kills, LLC (collectively, Rodriguez Defendants) have a professional relationship with Mr. Trejo. (Dkt. 91.) Mr. Rodriguez directed several films in which Mr. Trejo appeared, including *Grindhouse*, *Planet Terror*, and *Machete*. Machete Kills, LLC is the signatory for the screenplay and movie *Machete Kills*, which Mr. Rodriguez directed.

*Machete Kills* features Mr. Trejo. The Rodriguez Defendants appear to be linked with the Talent Agency Defendants by virtue of their relationship with Mr. Trejo: Mr. Rodriquez has worked with Mr. Trejo and Mr. Trejo has worked with the Talent Agency Defendants.

Troublemaker Studios, Eya Productions, 1821 Pictures, Aldamisa Entertainment, and Quick Draw Productions (collectively, Production Defendants) are connected to this litigation by virtue of their role in the production of films in which Mr. Trejo appears. (Dkt. 65.)

Open Roads Films is a film distribution company. (Dkt. 65, 109.) Open Roads is alleged to be involved in this lawsuit due to its distribution of *Machete Kills*. (*Id.*)

All of the Movants are nonresidents of the state of Utah. (FAC ¶¶ 2-14.) None of the Movants is a party to ITN's License Agreement. (*See* Dkt. 90-2.) Several of the Movants filed declarations in which they deny having any knowledge of ITN or the License Agreement. (*See, e.g.*, Dkt. Nos. 90-1, 90-2, 91-1, 109-1, 110-1, 113, 120-1, 134.)

### C. The Dispute

This dispute arises out of ITN's contractual relationship with Mr. Trejo. ITN generally alleges in its Amended Complaint that the Defendants interfered with the License Agreement and ITN's relationship with third parties, which in turn resulted in lost profits and harm to ITN's reputation within the film industry.

Included in the Amended Complaint are eleven causes of action: Abuse of Personal Identity; Common Law Misappropriation of Identity; Unfair Competition; Lanham Act Unfair

5

Competition; Intentional Interference with Economic Relations; Negligence; Defamation; Civil Conspiracy; Respondeat Superior Liability; and Constructive Trust.[2]  (Dkt. 65.)

Each cause of action is connected to a central narrative.  ITN claims the Defendants were concerned that ITN's *Vengeance* would diminish the success of Mr. Rodriguez's *Machete Kills*.  In an effort to bolster *Machete Kills*, Mr. Rodriguez allegedly conspired with the Talent Agency Defendants to undermine *Vengeance*.  To that end, Talent Agency Defendants made defamatory statements to Mr. Wozniak about ITN and its owner, Gil Medina.  These statements adversely affected ITN's reputation in the film industry.  Mr. Rodriguez and the Talent Agency Defendants also coerced Mr. Wozniak to back out of his agreement to promote the App, because they believed that removing the App from the marketplace would damage *Vengeance* by proxy.

ITN also claims that the Defendants impermissibly used Mr. Trejo's likeness and identity by participating in the production, marketing, or distribution of films that incorporated property that Mr. Trejo licensed to ITN.  ITN claims that these film-related activities constitute abuse of personal identity, misappropriation of property, unfair competition, and unjust enrichment.  ITN submits this gives rise to a claim for constructive trust.

Relevant to the jurisdictional questions posed by the motion to dismiss, ITN alleges that Defendants intended and understood that their conduct would cause harm to ITN in Utah.

---

[2] Each claim is asserted against all Defendants with the exception that ITN limits the Lanham Act and Negligence Claims to the Talent Agency Defendants, and its Intentional Interference with Economic Relations, Defamation, and Civil Conspiracy Claims to Mr. Rodriguez and the Talent Agency Defendants.  (Dkt. 65.)

## II. ANALYSIS

### A. Legal Standard for Personal Jurisdiction

Under the Due Process Clause of the Fourteenth Amendment, a district court may enter a valid and enforceable judgment only when it has personal jurisdiction over the parties. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Because personal jurisdiction involves a court's power to bind the parties, it "is inflexible and without exception" that courts must resolve jurisdictional matters at the outset. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (citation and quotation marks omitted).

Ordinarily, the "plaintiff[] bear[s] the burden of establishing personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). The jurisdictional burden is light at the pleading stage because the court accepts "allegations in the complaint . . . as true to the extent they are uncontroverted by the defendant's affidavits." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (citation omitted). In this case, several of the Movants filed declarations contesting ITN's jurisdictional allegations. When naked factual allegations in a complaint are contradicted, a court's task "is to determine whether the plaintiff['s] allegations, as supported by [its own] affidavits, make a prima facie showing of the minimum contacts necessary to establish jurisdiction." *Rambo*, 839 F.2d at 1417.[3]

Ordinarily, the plaintiff must allege facts to show both "that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071,

---

[3] For the purpose of the pending motions to dismiss, ITN rests almost entirely on the Amended Complaint. It has not bolstered its allegations by filing responsive affidavits. Mr. Medina filed a short affidavit with the court, but his statement does not contest any of the factual statements made by defendants. (Dkt. 120-1.)

1074 (10th Cir. 1995).  But Utah's long-arm statute permits the exercise of "jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *See* Utah Code § 78B-3-201.  As a result, the traditional two-step jurisdictional analysis effectively collapses into a single inquiry, where "any set of circumstances that satisfies due process will also satisfy [Utah's] long-arm statute." *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 949 (Utah 2008).  Under the Due Process Clause, a court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Id.* The court considers each in turn.

    **B.  General Jurisdiction**

    ITN asserts that general jurisdiction is proper here because Defendants occasionally conduct business in the State of Utah.  To submit to general jurisdiction, "the defendant must be conducting substantial and continuous local activity in the forum state." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (internal quotation marks and citation omitted).  Federal courts impose a "more stringent minimum contacts test" for general jurisdiction, because it permits the court to hear and decide any claims against a defendant, regardless of whether those claims relate to activities in the forum. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004).

    ITN's conclusory jurisdictional allegations in the Amended Complaint and its briefing do not rise to the necessary level of substantial and continuous activity, nor do they demonstrate that the Movants are "essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  In a single paragraph, ITN alleges only that a

group of non-resident Defendants sold, distributed, or promoted films, actors, or products in Utah.  (FAC ¶ 17; Dkt. Nos. 124, 126.)  Without more, this conclusory statement cannot satisfy the stringent test for general jurisdiction.  Because the court may not exercise general jurisdiction over the Movants, the court next considers whether ITN alleged sufficient minimum contacts to permit the court to exercise specific jurisdiction over any of the Movants.

### C.  Specific Jurisdiction

Specific jurisdiction over a nonresident is established when the plaintiff demonstrates that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted).  Specific jurisdiction permits the court to exercise authority over a nonresident defendant "only with respect to claims arising out of the particular activities of the defendant in the forum state."  *Pohl*, 201 P.3d at 949.

The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quotations omitted) "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Id*.  To satisfy the minimum contacts threshold in tort cases, the plaintiff must show that "the nonresident defendant purposefully directed its activities at the forum state."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quotation omitted).

In addition to these requirements, courts recognize that the defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum."

*Walden*, 134 S. Ct. at 1122 (emphasis in original).  The proper analysis focuses on the substance of "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.*  And it has long been recognized that a series of "random, fortuitous, or attenuated contacts" with the forum do not satisfy the requirements of the Due Process Clause.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation omitted).[4]

The instant motions require the court to determine whether due process permits the court to exercise personal jurisdiction over a nonresident defendant who allegedly engaged in intentional, out-of-state tortious conduct that adversely affected a forum resident's economic relationships with third parties.  As part of this analysis, the court must consider the effect of declarations that specifically controvert the jurisdictional facts alleged by the plaintiff.

The parties' briefing focuses primarily on the effect of a relatively recent Tenth Circuit decision: *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008).  ITN and the Movants each argue that *Dudnikov* supports their position.  ITN submits that the decision stands for the proposition that defendants need not actually engage in conduct in Utah to be haled into the forum—it is enough if defendants know their actions would cause harm in Utah.  The Movants disagree.  They argue that *Dudnikov* requires a plaintiff to prove that each defendant purposefully directed its actions at the forum, and that mere knowledge of a plaintiff's location is not sufficient to establish specific jurisdiction.  Neither position is entirely correct.

---

[4] If the court finds sufficient minimum contacts, it may consider the second prong of the *International Shoe* test and ask "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Because minimum contacts do not exist in this case, the court does not reach this question.

In *Dudnikov*, eBay "power sellers" based in Colorado brought suit against the defendants for interfering with an online auction. *Id.* at 1067. Prior to the suit, the defendants discovered a possible infringement of their copyrights, "promptly contacted eBay in California[,] and successfully suspended [the] auction." *Id.* The defendants also contacted the sellers directly by e-mail and threatened to sue. *Id.* Shortly thereafter, the sellers filed a declaratory action in their home state. The lawsuit presented the question whether a Colorado court may exercise personal jurisdiction over out-of-state defendants, when the defendants did not physically enter the forum, but understood that contacting a third-party located outside of the state would interfere with the operation of sellers' Colorado-based business. *Id.* at 1076, 1082.

The Tenth Circuit concluded that an intentional act, "expressly aimed at the forum," with "knowledge that the brunt of the injury would be felt in the forum state" satisfies the minimum contacts test. *Id.* at 1072. Because the defendants intentionally contacted eBay with the express purpose of stopping a Colorado-based sale on behalf of a small, Colorado-based business, the Tenth Circuit concluded the trial court possessed personal jurisdiction over the defendants. *Id.* at 1072-82. Notably, unlike in this case, the Tenth Circuit observed that the affidavits submitted by the defendants "do not contest, but instead tend to confirm, that they intended to halt plaintiffs' auction."[5] *Id.* at 1076.

After the briefing was completed, several of the Movants filed notices of supplemental authority. (Dkt. Nos. 142, 143, 144.) The Movants argue that the Supreme Court's recent

---

[5] In *Dudnikov*, the Tenth Circuit recognized that "well-pled (that is, plausible, non-conclusory, and non-speculative) facts" in the complaint would be taken as true, in part because these facts were not contradicted. 514 F.3d at 1069. In contrast to *Dudnikov*, the Movants in this case submitted declarations that contest the asserted factual bases for ITN's allegations relating to the intentional acts expressly aimed at the forum state.

11

decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), further clarified the jurisdictional analysis applicable here. The court agrees. In *Walden*, a state police officer seeking forfeiture of $97,000 in cash transported by two travelers allegedly filed a false probable cause statement with the United States Attorney's Office in Georgia. *Id.* at 1119. Returning to Nevada, the travelers filed a *Bivens* action against the officer in their home state. *Id.* at 1120. The travelers argued that the Nevada court possessed specific jurisdiction over the officer, because the officer knew of their place of residence and intended that the forfeiture of the funds would affect the travelers in Nevada. *Id.* at 1120. The Ninth Circuit agreed and concluded that the trial court had jurisdiction over the agent, because the agent "expressly aimed" the affidavit at Nevada with the knowledge that "it would affect persons with a 'significant connection' to Nevada." *Id.*

The Supreme Court reversed. The Court clarified that minimum contacts are determined by evaluating "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. Consistent with its precedent, the Court stated that a "plaintiff cannot be the only link between the defendant and the forum." *Id.* And if the only factual basis for jurisdiction was a "defendant's relationship with a plaintiff or third party," an exercise of jurisdiction would be inconsistent with due process. *Id.* at 1123. Ultimately, the Court held that the district court properly declined to exercise jurisdiction over the officer, because the officer "formed no jurisdictionally relevant contacts with Nevada" and his activities were conducted in and directed toward another forum. *Id.* at 1124 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

12

In light of *Dudnikov* and *Walden*, specific jurisdiction can be found here only if the Movants engaged in intentional acts in a manner purposefully directed at Utah. After careful consideration of these cases and the record before it, the court concludes that it lacks personal jurisdiction over each group of Movants for the reasons stated below.

### 1. *The Talent Agency Defendants*

ITN alleges that the court has personal jurisdiction over the Talent Agency Defendants because those Defendants continued to represent Mr. Trejo after learning of the Utah-based License Agreement. ITN also asserts that jurisdiction is proper because the Talent Agency Defendants understood the economic effect of their conduct on ITN's Utah-based business.

Even accepting ITN's well-pled jurisdictional allegations as true, the court must nevertheless conclude that it lacks personal jurisdiction for three reasons. First, the Talent Agency Defendants did not contract with ITN or assent to the terms of the License Agreement. Even assuming that ITN notified the Talent Agency Defendants of the existence of the License Agreement, an incidental awareness of a third-party agreement will not itself subject a non-resident to jurisdiction in the forum where the third-party agreement was formed or one of the parties to the agreement resides. As recently recognized by the Supreme Court, the contact with this forum must arise out of a relationship affirmatively created by the Talent Agency Defendants. *See Walden*, 134 S. Ct. at 1122.

Second, although the Amended Complaint identifies a relationship between the Talent Agency Defendants and ITN, it fails to articulate a substantial connection between the Talent Agency Defendants and Utah. *See id.* at 1122-23. In this regard, the case is analogous to

*Walden*, where mere knowledge of the possible effect one's conduct may cause on a party who resides in another state was insufficient to establish personal jurisdiction. *Id.* at 1122 (recognizing inquiry evaluates "the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there").

Third, nearly all of the activities identified in the Amended Complaint occurred outside of Utah or involved nonresidents. For example, while ITN alleges in its Amended Complaint that discussions with Mr. Wozniak led to the withdrawal of his support for the App, the conversation identified occurred outside of the Utah. ITN contends that these events are like those found sufficient in *Dudnikov*. But unlike *Dudnikov*, the Talent Agency Defendants here filed declarations that specifically call into question the conclusory allegations contained in the Amended Complaint. *See Dudnikov*, 514 F.3d at 1069. Because ITN failed to present well-pled and uncontroverted facts showing that the Talent Agency Defendants intentionally and purposefully directed their conduct at Utah, the court cannot find that it possesses personal jurisdiction over the Talent Agency Defendants.

  2. *The Rodriguez Defendants*

ITN maintains that jurisdiction over the Rodriguez Defendants is proper because they conspired with the Talent Agency Defendants to intentionally and purposefully injure ITN. The court finds that it lacks personal jurisdiction over the Rodriguez Defendants for two reasons. First, similar to the Talent Agency Defendants, none of the alleged tortious conduct occurred in Utah or established a substantial relationship between the Rodriguez Defendants and this forum.

Second, Mr. Rodriguez filed a declaration, in which he specifically denies knowledge of ITN, its relationship with Mr. Trejo, and the License Agreement. Mr. Rodriguez also denies awareness of or participation in a conspiracy to subvert the success of ITN's App. And ITN cannot demonstrate that the Rodriguez Defendants had sufficient minimum contacts with the forum, because ITN has not presented any additional, uncontroverted evidence that would permit the court to find that the Rodriguez Defendants purposefully directed activities at the forum.

Instead, the Amended Complaint merely articulates the type of random, attenuated, and fortuitous contacts that could be expected between a nationally-recognized filmmaker, a talent agency, and an actor. Because the uncontroverted well-pled facts fail to establish a sufficient connection between the Rodriguez Defendants and the state of Utah, the court may not exercise personal jurisdiction over them.

### 3. *The Production Defendants*

ITN argues that the court may exercise jurisdiction over the Production Defendants because of their role in the production of *Machete Kills*, a nationally distributed film that allegedly deprived ITN of the fruits of the License Agreement. Many of the allegations in the Amended Complaint do not specifically pertain to the Production Defendants. But even accepting well-pled allegations as true, the court lacks personal jurisdiction for two reasons.

First, ITN fails to establish a connection between the Production Defendants and Utah. The Production Defendants allegedly worked with non-residents: Mr. Trejo; Mr. Rodriguez; and the Talent Agency Defendants. Their development work on the relevant films occurred in

California, not Utah. These relationships or contacts do not establish a sufficient connection between "the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121.

Second, the Production Defendants present a series of declarations in which they specifically deny engaging in intentional conduct purposefully directed towards this forum. As with the other Movants, the court cannot exercise personal jurisdiction over the Production Defendants, where ITN has not presented any additional evidence or uncontroverted allegations that meet the threshold of demonstrating sufficient minimum contacts with the State of Utah.

    *4. Open Roads Films*

Finally, ITN maintains that personal jurisdiction may be exercised over Open Roads because it distributed *Machete Kills*. But again, ITN failed to present any well-pled, uncontroverted facts that support a basis for exercising the court's jurisdiction. Open Roads denies any knowledge of ITN, its relationship with Mr. Trejo, and the License Agreement. Even if it possessed such knowledge, ITN failed to present any evidence that Open Roads purposefully intended to harm a Utah-based business in the course of a national film distribution campaign. In similar contexts, the Tenth Circuit has held that national distribution or advertisements do not give rise to specific jurisdiction. *See, e.g., Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991). Where ITN fails to establish a sufficient connection between Open Roads and Utah, the court may not exercise personal jurisdiction over Open Roads.

5. *Overnight Films, LLC*

The sole remaining Defendant, Overnight Films, LLC, has not filed a motion to dismiss for lack of personal jurisdiction.[6] In the Amended Complaint, ITN alleges that Overnight Films, a Delaware limited liability company with its principal place of business in Los Angeles, California, engaged in the same conduct as Aldamisa Entertainment, 1821 Pictures, Quick Draw Productions, Machete Kills, LLC, and Open Road Films. (Dkt. 65, ¶¶ 13, 79.) The Amended Complaint contains no additional allegations that relate uniquely to Overnight Films.

In the Tenth Circuit, a trial court may dismiss an action *sua sponte* if a plaintiff fails to prosecute the case or comply with the Federal Rules of Civil Procedure. *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003); *see also* Fed. R. Civ. P. 41(b). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962). Ordinarily, a decision to dismiss without prejudice rests within the sound discretion of the trial court. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Justice Ctr.*, 492 F.3d 1158, 1161 (10th Cir. 2007).

The court concludes that Overnight Films should be dismissed without prejudice for three reasons. First, ITN does not appear to have timely effected service of process on Overnight Films in the eighteen months since the filing of the Amended Complaint. *See* Fed. R. Civ. P. 4(m). Second, as alluded above, it is doubtful whether the court would be able to assert personal jurisdiction over Overnight Films, because the Amended Complaint does not describe any facts

---

[6] The court has already dismissed with prejudice Defendants Machete's Chop Shop, Inc. and Overnight, LLC, pursuant a stipulated motion under Rule 41(a) of the Federal Rules of Civil Procedure. (*See* Dkt. 53.)

unique to Overnight Films. Although the issue has not yet been presented to the court, the jurisdictional analysis and result set forth in the preceding sections would likely apply equally to Overnight Films. Third, dismissal of Overnight Films will likely allow ITN to pursue its claims against the Defendants in a single forum. Accordingly, the court dismisses the claims against Overnight Films without prejudice.

### III. CONCLUSION

For the reasons stated, the court **GRANTS** the Movants' motions to dismiss for lack of personal jurisdiction.[7] (Dkt. Nos. 90, 91, 109, 110.) Accordingly, the claims against the Movants and Overnight Films are **DISMISSED** without prejudice to re-file in another forum. The court directs the Clerk of Court to close the case.

**SO ORDERED** this 9th day of June, 2014.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[7] Because the court lacks personal jurisdiction over the Movants, it does not reach any of the other arguments raised in the Movants' motions. (*See* Dkt. Nos. 90, 91, 109, 110.)